In the cases of Wells v. The New York Central RailroadCompany, and of Perkins v. Same Defendant, this court decided — six judges concurring — that the carriers of passengers, as well as other common carriers, might restrict their common-law liability by express contract. In each of those cases, the passenger was riding on a free ticket. In this case, in like manner, the plaintiff's intestate was riding ostensibly also upon a similar free ticket. I do not see why this case is not precisely within the rule established in those cases, and why the doctrine of stare decisis does not require us to reverse the judgment in this case. The fact that the plaintiff's intestate was riding in defendant's cars, to accompany his stock, carried as freight, and for which the customary charges were paid and received, cannot, as I see, affect the question. The ticket which Bissell received, and which he used as a voucher to show his right to ride in a passenger car, was, in fact, a free ticket. He received it as a free ticket. Besides the indorsement on the ticket, he signed an express agreement, in which he engaged to take his risk in respect to all accidents or injuries to his person from the negligence of the defendant's agents, or whatever cause. The argument that the rule in the Wells and Perkins cases cannot apply in this case, because there was, in fact, a consideration received by the defendant for the carriage of the plaintiff's intestate, is not, I think, sound. It disregards the force of the ticket which he received, and on which he was, in fact, riding at the time of the accident, and which he received and used as a free ticket, and for which he professedly paid no fare separately from the price paid for the transportation of his stock. But it is undoubtedly true that he received such free ticket, and it was given him by the defendants in consideration of the business and profits received from him from the freight of the stock which he accompanied. So, in all cases when free tickets are given, I suppose there is some consideration of interest, or profit, or advantage, received or expected, which constitutes the inducement to the giving of the ticket. In this sense, there would probably seldom, if ever, be given by a railroad company a strictly free ticket. *Page 454 
Nor does the liability of the carrier depend upon the question whether he received any actual pecuniary or other consideration for the transportation of a person over their road. Receiving a passenger into their cars for transportation, binds the carriers to carry him safely — as much so with a passenger who has paid no fare as with one who has paid full fare and purchased the customary ticket; and subjects them to an action for damages for any injury resulting from the negligence of themselves or their servants and agents. The exemption from such liability rests solely upon the ground of express contract. The fact that Wells and Perkins, in the cases referred to, applied for and received respectively a free pass, was doubtless the reason why they made the agreement to take their own risks. The Company, for the same reason, made that a condition of giving them a free pass. It could not have made or imposed any such terms or conditions upon a person paying his fare; for, upon the payment of the customary fare, they were bound to carry such passenger at their own risk in respect to all injuries resulting from the negligence of the Company, its agents or servants.
It cannot be material, as I conceive, whether a person who receives a free pass and agrees to take his own risk of accidents, and to become, in effect, his own insurer against the casualties of the trip, receive such free ticket to enable him to accompany his property, or for any other reason or consideration. If he takes the free ticket and assents to the agreement indorsed thereon, or otherwise expressly agrees to take his own risk, he must, in either case, abide by his contract, and is bound thereby.
In the decision of this case at the general term of the Supreme Court, I expressed the opinion that the action could be sustained on the ground that the negligence of the brakeman was the negligence of the corporation, for the reason that he was improperly employed, and was unfit for his station. This view, I am satisfied, was erroneous. The case was not tried upon this theory. I think the judgment should be reversed, and a new trial granted, with costs to abide the event. *Page 455 
DAVIES and ALLEN, Js., were also for reversal.